

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO:   13-49 |
| v. | * | SECTION:   "A" |
| ANSELMO CAPILLANES | * | |

\*   \*   \*

## FACTUAL BASIS

The United States, represented by the United States Attorney's Office for the Eastern District of Louisiana, and the defendant, **ANSELMO CAPILLANES**, hereby agree that this Joint Factual Statement is a true and accurate statement of the Defendant's criminal conduct, that it provides a sufficient basis for the Defendant's plea of guilty to the charges contained in the Bill of Information in the above-captioned matter and as set forth in the plea agreement signed this same day, and had this matter proceeded to trial, the following facts would be established beyond a reasonable doubt through competent evidence and testimony.

The Act to Prevent Pollution from Ships ("APPS"), codified at Title 33, United States Code, Section 1901, et. seq., and implemented by Title 33, Code of Federal Regulations, Section 151, et. seq., makes it a crime to knowingly violate the MARPOL Protocol, an international treaty that

regulates pollution from ships. Under the APPS regulations, each oil tanker of 150 gross tons or more must maintain a record known as an Oil Record Book. Entries must be made in the Oil Record Book for certain engine room operations including the disposal of oil residue or the discharge overboard or disposal otherwise of bilge water that has accumulated in machinery spaces. All accidental, emergency or other exceptional discharges of bilge waste or oil must be recorded in the ORB along with the reason for the discharge. Each of these engine room operations is required to be fully recorded without delay in the Oil Record Book. The entries are to be signed by the person or persons in charge of the operation and each completed page must be signed by the Captain of the ship. These regulations apply to foreign-flagged ships when they are in the navigable waters of the United States, or while at a port or terminal under the jurisdiction of the United States. The U.S. Coast Guard regularly inspects the Oil Record Book during port state inspections to determine compliance with U.S. law and the MARPOL Protocol.

The defendant, **ANSELMO CAPILLANES,** (hereinafter referred to as **"CAPILLANES"**) served as the Second Engineer of the *M/T Stolt Facto,* a 26,328 gross ton oil tanker, from September 22, 2012 until on or about January 16, 2013. **CAPILLANES** was ordered by the Chief Engineer to be responsible for the operation of the Oil Water Separator on the tanker despite his lack of training on the proper operation of the system onboard the *M/T Stolt Facto.*

**CAPILLANES** admits that on more than one occasion starting in October 2012, he directed members of the engine room crew to connect hoses from the bilge wells and bilge holding tank located on the lower deck of the engine room and pump the contents of those tanks into the sewage holding tank on the uppermost deck of the engine room. By transferring the contents of the bilge wells to the sewage holding tank the oily water by-passed the Oil Water Separator and was then

discharged from the sewage holding tank into the ocean. **CAPILLANES** did not record these transfers or discharges in the Oil Record Book or tell the Chief Engineer, who signed and maintained the Oil Record Book, that he had made the transfers or discharges. **CAPILLANES** and the Chief Engineer initialed the Oil Record Book entries stating that the Oil Water Separator had been used to treat all the bilge water prior to its discharge overboard.

**CAPILLANES** further admits that in order to create the appearance that the information in the Oil Record Book was accurate, he would either put fresh water or sea water through the Oil Water Separator so that he could get readings from the White Box, the data recorder on the Oil Water Separator, making it appear that the Oil Water Separator was used in a manner consistent with the statements in the Oil Record Book to conceal that not all of the ship's oily waste water was properly treated before being dumped overboard. **CAPILLANES** admits that he caused the false entries in the Oil Record Book and he did so knowing that these entries were material to the Coast Guard's inspection of the vessel.

On or about January 15, 2013, the *M/T Stolt Facto* entered the waters of the United States in the Eastern District of Louisiana with the inaccurate Oil Record Book onboard. On or about that

same date, the United States Coast Guard boarded the *M/T Stolt Facto* pursuant to their 89(a) authority and were presented with the false Oil Record Book.

**READ AND APPROVED:**

_____
ANSELMO CAPILLANES
Defendant

_____
EDDIE CASTAING
Attorney for Defendant

\_\_3/26/13\_\_
Date

_____
EMILY K. GREENFIELD 28587
Assistant United States Attorney